OPINION
{¶ 1} Defendant-appellant, Gerard Reynolds-Bey ("appellant"), appeals the judgments of the Franklin County Court of Common Pleas, which convicted appellant of aggravated murder, murder, aggravated robbery, and two counts of tampering with evidence.
 {¶ 2} The Franklin County Grand Jury indicted appellant on charges of aggravated murder, aggravated robbery, and tampering with evidence in the *Page 2 
November 10, 2005 death of Mary Cook. The grand jury separately indicted appellant on charges of aggravated murder and tampering with evidence in the death of Carolyn Williams, which occurred around November 14, 2005.
 {¶ 3} Appellant pleaded not guilty to the charges and requested a jury trial on each indictment. Plaintiff-appellee, the State of Ohio ("appellee"), filed a motion to join the trials. Over appellant's objection, the trial court joined the trials. At that trial, appellee submitted the following evidence.
 {¶ 4} Appellant dated Cook and lived with her on November 10, 2005. Thus, appellant did not use force to enter Cook's house to kill her in her bedroom on that date. Appellant stabbed Cook 15 times with a knife. In particular, appellant stabbed Cook 12 times in the neck, with one deep stab to Cook's carotid artery, a vein that leads directly to the heart. On the date of Cook's murder, a witness noticed a wound on appellant's hand. In addition, police investigating Cook's death found appellant's blood in Cook's home, including her bedroom. Likewise, police found appellant's bloody fingerprint on a broom in Cook's bedroom.
 {¶ 5} Appellant also dated Williams and spent time at Williams' apartment. Shortly before her death, Williams told a friend, Roslyn Gardner, that she feared appellant, and Williams wanted Gardner to take from appellant the keys to Williams' apartment. However, appellant did not relinquish the keys.
 {¶ 6} Appellant did not use force to enter Williams' apartment to kill her in her bedroom around November 14, 2005. Appellant stabbed Williams 16 times with a knife. In particular, appellant stabbed Williams 12 times in the neck, with one deep stab to Williams' carotid artery. *Page 3 
 {¶ 7} Lastly, appellee's evidence indicated that stabbings do not happen frequently. In particular, Columbus Police Officer Troy Palmer testified that, in his 15-year career, he has responded to a minimum of ten stabbing incidents, with one-half of the ten involving the neck and chest area. Similarly, Dr. Tae An, who performed the autopsies on Cook and Williams, testified that, out of the 3,000 autopsies he has performed during his 34-year career, only 100 involved stab wounds.
 {¶ 8} After appellee rested its case-in-chief, appellant renewed its objection to the joinder of the murder trials, and the trial court overruled the objection. Thereafter, the jury found appellant guilty of aggravated murder and tampering with evidence in the death of Williams. The jury found appellant not guilty of aggravated murder in the death of Cook, but guilty of murder, aggravated robbery, and tampering with evidence in the death of Cook. The trial court then sentenced appellant.
 {¶ 9} Appellant appeals, raising two assignments of error:
 ASSIGNMENT OF ERROR ONE
 PREJUDICIAL ERROR OCCURS WHEN THE TRIAL COURT JOINS TWO SEPARATE OFFENSES OCCURRING AT DIFFERENT TIMES AND PLACES FOR TRIAL. JOINDER OF UNRELATED OFFENSES DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE. *Page 4 
 {¶ 10} In his first assignment of error, appellant argues that the trial court erred by joining the trials of the separate indictments. We disagree.
 {¶ 11} Pursuant to Crim. R. 13, separate indictments may be tried together if the offenses could have been joined in a single indictment. Under Crim. R. 8(A), a trial court may join offenses in the same indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Here, the charges against appellant concerned homicides with similar characteristics. Specifically, the Cook and Williams homicides occurred within days of each other, and both victims died from knife stabbings, events that Officer Palmer and Dr. An testified do not frequently happen. Likewise, Cook and Williams suffered an identical amount of stab wounds to their necks, and each suffered deep stab wounds to their carotid arteries. The victims dated appellant, appellant had access to their homes, and there was no forceful entry into either of the victims' homes before the homicides. Accordingly, we conclude that joinder was proper under Crim. R. 13 and 8(A). See State v. Hackney (Aug. 30, 1993), Clermont App. No. CA92-12-118 (upholding the joinder of trials on charges pertaining to different victims and dates, but involving the defendant's similar instances of conduct).
 {¶ 12} We next examine whether the joinder prejudiced appellant and, thus, triggered the need for severance under Crim. R. 14. We will not reverse a trial court's refusal to sever joint trials under Crim. R. 14 absent an abuse of discretion. State v. Lott (1990), 51 Ohio St.3d 160,163. An abuse of discretion connotes more than a mere *Page 5 
error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 13} Joint trials on the separately indicted homicides did not prejudice appellant if Evid. R. 404(B) would have allowed evidence on one of the homicides to be admissible at a separate trial of the other homicide. See State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 50. In pertinent part, Evid. R. 404(B) permits evidence of "other crimes, wrongs, or acts * * * as proof of * * * identity." The prosecution may introduce evidence of "other acts" to prove identity in another crime if the defendant committed the "other acts" "`within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes.'" State v. Shedrick (1991), 61 Ohio St.3d 331, 337, quotingState v. Curry (1975), 43 Ohio St.2d 66, 73. See, also, State v.Lowe, 69 Ohio St.3d 527, 1994-Ohio-345, syllabus (holding that the "other acts" evidence must be related to and share common features with the crime in question to be admissible to prove identity under Evid. R. 404[B]). Substantial proof must exist that a defendant committed the alleged "other acts." Lowe at 530.
 {¶ 14} Here, substantial proof demonstrates that appellant murdered Cook. In particular, Cook was murdered in her bedroom, and police found appellant's blood and bloody fingerprint in Cook's bedroom after the murder. In addition, a witness noticed a wound on appellant's hand on the date of Cook's murder. Given the substantial proof that appellant murdered Cook, and given that Cook and Williams were killed under a similar pattern of conduct, Evid. R. 404(B) would have allowed appellee to introduce evidence of Cook's homicide at a separate trial on Williams' homicide. Therefore, *Page 6 
appellant was not prejudiced by the joint trials on the two homicide indictments, and the trial court did not abuse its discretion by not severing the trials. Accordingly, we overrule appellant's first assignment of error.
 {¶ 15} In his second assignment of error, appellant argues that neither the sufficiency of the evidence nor the manifest weight of the evidence links him to Williams' homicide. Thus, appellant argues that we must reverse his aggravated murder conviction for Williams' death. We disagree.
 {¶ 16} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, superceded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds inSmith, and following Jackson v. Virginia (1979), 443 U.S. 307; State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not *Page 7 
evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 17} In determining whether a verdict is against the manifest of the evidence, we sit as a "`thirteenth juror.'" State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 18} Appellant disputes neither the sufficiency nor the weight of the evidence on his murder conviction for Cook's death. As we detailed above, appellant is identified as the perpetrator in the Williams' homicide through its shared characteristics with the Cook homicide. Appellant also had easy access to Williams' apartment. Finally, Williams' fear toward appellant shortly before her homicide further implicates appellant. See State v. Griffin (2001), 142 Ohio App.3d 65,77 (recognizing that the victim's fear of the defendant "can be a particularly compelling piece of circumstantial evidence" in a *Page 8 
homicide case). Accordingly, we conclude that appellant's aggravated murder conviction for Williams' death is not based on insufficient evidence. And, given the strength of this evidence, we cannot conclude that the jury lost its way or created a miscarriage of justice. Therefore, we overrule appellant's second assignment of error.
 {¶ 19} In summary, we overrule appellant's first and second assignments of error. Thus, we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
 BRYANT and KLATT, JJ., concur. *Page 1