[Cite as *State v. Ryan*, 2018-Ohio-4739.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff – Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 CAA 01 0011 |
| DAVID T. RYAN | |
| Defendant – Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:    Appeal from the Delaware County Court
of Common Pleas, Case No. 17 CR I 02
0052


JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    November 26, 2018


APPEARANCES:


For Plaintiff-Appellee                     For Defendant-Appellant

CAROL HAMILTON O'BRIEN              DONALD GALLICK
Delaware County Prosecuting Attorney    190 North Union Street – #102
                                       Akron, Ohio  44304
DOUGLAS N. DUMOLT
Assistant Prosecuting Attorney
140 N. Sandusky Street, 3rd Floor
Delaware, Ohio  43015

*Hoffman, P.J.*

{¶1}   Appellant David T. Ryan appeals the judgment entered by the Delaware County Common Pleas Court convicting him of forty-four counts of pandering obscenity involving a minor (R.C. 2907.321(A)(1)) and thirty-six counts of pandering sexually oriented material involving a minor (R.C. 2907.322(A)(1)), and sentencing him to an aggregate term of incarceration of four years.  Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2}   On April 26, 2016, an email with attachments was sent from an email address associated with Appellant to the same email address.  America Online (AOL) flagged the email because the attachments potentially contained child pornography.  AOL forwarded the email to the National Center for Missing and Exploited Children (NCMEC).

{¶3}   Upon reviewing the email and attachments, NCMEC forwarded the email to Sergeant Jeff Zech, commander of the Franklin County Internet Crimes Against Children (ICAC) taskforce.  Sgt. Zech opened the file to verify it met the definition of child pornography.  Upon so determining, he forwarded the information to Delaware County, where Appellant resided.

{¶4}   Det. Jason Campbell of the Delaware County Sheriff's Department searched online databases and determined Appellant lived alone.  He performed physical surveillance of Appellant's residence for several days, for six to eight hours at a time.  He noted no persons leaving or entering the residence, and determined Appellant was the only person residing there.  He checked from his phone or i-pad for unsecured wifi networks accessible from Appellant's residence, and found none.

**{¶5}** Upon determining Appellant was the sole resident at the address and his wifi network was secured, Det. Campbell drafted a search warrant. Police seized numerous items from Appellant's residence pursuant to the warrant. On a computer and an external hard drive in his home office, they found numerous videos and images of child pornography. Several of the images were located in a user-created file labeled "Doves" which was present on the desktop of the Mac computer recovered from Appellant's home office. Additional files containing child pornography were located in the "pictures" file on the computer. Analysis of the computer further revealed Google searches physically typed into the computer on numerous dates, including "underage teen porn," "kiddy teen anal," "forced innocent teen sex," "young teen raped," and "preschool girls in thongs." Tr. 333-338. A drawer in the desk where the computer was located contained a butt plug, a twisted dildo, "boy butter," and panties. Pieces of Appellant's mail were also found on the desk, and the photos on the computer included one of Appellant seated at the desk using the computer.

**{¶6}** Appellant's cell phone was seized from his person. The phone was linked to the email address associated with the file flagged by AOL. Further, a search of the device revealed on the date police executed the search warrant on Appellant's residence, he was searching online for the definition of pandering and for information on how to delete past searches and other internet activity.

**{¶7}** On February 1, 2017, the Delaware County Grand Jury returned an 82-count indictment charging Appellant with pandering obscenity involving a minor and pandering sexually oriented material involving a minor. Prior to trial, Appellant's motion

to suppress was overruled, and the State's motion in limine to exclude the testimony of Appellant's expert was granted.

{¶8} The case proceeded to jury trial. At the beginning of the second day of trial, the parties stipulated the photographs and videos in counts one through eighty satisfied the content requirement of the statute in question and would constitute a violation of said statute.

{¶9} Appellant testified at trial he was rarely home. He testified he had an alarm system but rarely armed it, and many people have the password to disarm it. He further testified he has a spare key hidden outside, and many people know where the key is. He allowed people to access the house when he was not home to do work on the house, to watch his dogs, and to feed his fish. He testified a registered sex offender who lived in his neighborhood had access to the house when Appellant was not home, and he believed this person was responsible for the items found on the computer.

{¶10} The state dismissed counts 81 and 82, and the remaining 80 counts were submitted to the jury. Appellant was convicted of all counts and sentenced to four years incarceration on each count, to be served concurrently.

{¶11} It is from the December 29, 2017 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:


"I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS THE TRIAL COURT ERRONEOUSLY FOUND THAT THERE IS NO EXPECTATION OF PRIVACY WHEN USING A PRIVATE COMPANY FOR EMAIL

COMMUNICATION AND THAT A PRIVATE COMPANY IS ALLOWED TO FORWARD EMAIL CONTENT TO LAW ENFORCEMENT WITHOUT A WARRANT.

"II. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY BARRING APPELLANT'S EXPERT WITNESS FROM TESTIFYING AT A TRIAL.

"III. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE CONSTITUTIONS OF OHIO AND THE UNITED STATES AS HIS TRIAL COUNSEL COMMITTED MULTIPLE ERRORS DEPRIVING APPELLANT OF EFFECTIVE ASSISTANCE OF COUNSEL.

"IV.  THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION AS TO ALL COUNTS, AND ADDITIONALLY AS TO COUNT EIGHTY, AS THERE IS INSUFFICIENT EVIDENCE AS TO APPELLANT KNOWINGLY POSSESSING CONTRABAND.

"V. THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE RECORD DOES NOT PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT KNOWINGLY POSSESSED ILLEGAL IMAGES.

"VI.   THE TRIAL COURT ERRED BY NOT ADDRESSING DEFENDANT'S ARGUMENT THAT THE COUNTS SHOULD MERGE INTO 15 CONVICTIONS AS ALLIED OFFENSES OF SIMILAR IMPORT."

I.

{¶12} Appellant argues the court erred in overruling his motion to suppress evidence taken from his home pursuant to the search warrant. He argues AOL, as a mandatory reporter of child pornography pursuant to federal law, is a state actor and could not review his emails without a search warrant. He further argues even if AOL is a private actor, the subsequent review of the email attachments by NCMEC and police exceeded the scope of the AOL search, as they reviewed more photographs than AOL.

{¶13} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993);

*Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**{¶14}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *See State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶15}** When a motion to suppress attacks the validity of a search conducted under a warrant, the burden of proof is on the defendant to establish the evidence obtained pursuant to the warrant should be suppressed. *State v. Dennis,* 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997).

**{¶16}** Appellant argues because AOL has mandatory reporting requirements imposed by federal law, we should find the company to be a state actor, required to obtain a search warrant before opening attachments to Appellant's email. Federal courts have uniformly rejected this argument as to private internet service providers. *See, e.g., U.S. v. Stratton,* 229 F. Supp. 3d 1230, 1237 (D. Kan. 2017) (Sony was not an agent of the government when it complied with federal law in reporting suspected child pornography to NCMEC which was transmitted over its Playstation network); *U.S. v. Miller,* No. CV 16-47-DLB-CJS, 2017 WL 2705963 (E.D. Ky. 2017) (Google is not a government agent in identifying and forwarding suspected child pornography to NCMEC); *U.S. v. Wilson,* No. 3:15-CR-02838-GPC, 2017 WL 2733879 (Google's extensive screening process

constituted a private search of email account); *U.S. v. Reddick,* No. 17-41116, 2018 WL 3949510(5th Cir. 2018) (Microsoft Skydrive's PhotoDNA search is a private search).

**{¶17}** We agree with the trial court the search of Appellant's email was a private search. As a private search, the Fourth Amendment is not implicated unless the scope of the subsequent search by the state actors exceeded AOL's search:

The Fourth Amendment's proscriptions on searches and seizures are inapplicable to private action. *United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (citing *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984)). "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* (quoting *Jacobsen*, 466 U.S. at 117). Rather, the Fourth Amendment "is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Id.* (quoting *Jacobsen*, 466 U.S. at 117). Accordingly, any "additional invasions of ... privacy by the government agent must be tested by the degree to which they exceed[ ] the scope of the private search." *Id.* (quoting *Jacobsen*, 466 U.S. at 115).

**{¶18}** *Wilson, supra,* *8.

**{¶19}** Appellant argues in the instant case, the government search exceeded AOL's private search because AOL opened only one of the photo attachments to the email, while NCMEC and Sgt. Zech opened all of the attachments.

**{¶20}** As noted earlier, the burden of proof was on Appellant to establish the evidence obtained pursuant to the warrant should be suppressed. Appellant did not establish AOL opened only one of the attachments to the email. The Cyber Tipline Report provided by NCMEC answers the question, "Was File Reviewed by Company?" in the affirmative. Sgt. Zech testified at the suppression hearing, "It looks to – from reviewing the items, it primarily looks like one image in particular was flagged." Supp. Tr. 27-28. The fact AOL flagged one particular image does not demonstrate AOL did not open the remaining attachments to the same email.

**{¶21}** Further, the search warrant affidavit states in pertinent part:

2. This tip was submitted to NCMEC by AOL, Inc, in which email account dtrryan@aol.com sent an image known to contain child pornography to the same email account. The file was identified as "p6069744.jpeg" and depicts a prepubescent female with her underwear pulled down leaning over on a bed with her vagina and buttocks exposed.

3. AOL, Inc. did report this email address being registered to David T. Ryan.

4. Additional images sent by the same dtrryan@aol.com email address contains similar images with other prepubescent females in various stages of nude and undress. The IP address used to send the images was reported as 24.192.72.135.

{¶22} The photograph described in paragraph 2 is the photograph flagged by AOL in its tip to NCMEC, and by itself provides sufficient probable cause on which to issue the search warrant. Although additional images are referred to in paragraph 4, we find the trial court did not err in finding the one photograph provided the probable cause necessary for the search warrant.

{¶23} In any event, we find the officers clearly acted in good faith in relying on the warrant, and therefore the exclusionary rule does not apply. *U.S. v. Leon,* 468 U.S. 897, 917, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984). It is clear from the cyber tip AOL reviewed and described at least one image attached to the email. The description of the image, set forth above, was sufficient probable cause on which the warrant could issue. Even striking any reference of the other images from the affidavit, there was probable cause for the issuance of the search warrant, and police relied on the warrant in good faith.

{¶24} We find the trial court did not err in overruling Appellant's motion to suppress.

{¶25} The first assignment of error is overruled.

II.

{¶26} In his second assignment of error, Appellant argues the court abused its discretion in granting Appellee's motion in limine to prevent his expert, Keith Singleton, from testifying. We disagree.

{¶27} Prior to trial, Appellant provided the state a one-page report of the expert, stating the expert was expected to testify his opinion was the information provided during discovery fails to conclude Appellant's IP address was verifiable as the point of origin for the basis of the warrant, the history related to browser activity may not conclusively point

to Appellant, the log file entries do not conclusively show event activity on Appellant's email account, the investigation did not go far enough, the computer and data were not carefully investigated, and Appellant's computer was not scanned for a virus or malware. Appellee filed a motion in limine to exclude his testimony.

**{¶28}** The court held a hearing at which the expert witness testified. Mr. Singleton testified he formed his opinion solely from the summaries provided by Appellee in discovery, as examining the source material itself would have been too time consuming. The court granted the motion in limine, finding the witness failed to perform his own testing in the case and did not avail himself of the opportunity to examine the underlying data. Further, the witness admitted he had not used law enforcement software for eighteen years.

**{¶29}** Appellant did not attempt to call the witness at trial, nor did he proffer his testimony. The grant or denial of a motion *in limine* does not, in and of itself, preserve error for purposes of appeal. *State v. Hall*, 57 Ohio App.3d 144, 145 (1989). If a trial court grants a motion *in limine,* the party dissatisfied with that ruling is nevertheless required to attempt to introduce the challenged evidence at trial in order to preserve any error for review. This is because a trial court's ruling on a motion *in limine* does not actually determine whether the evidence is admissible. *Id.* at 145-6. Rather, a ruling *in limine* prevents a party from injecting improper evidence into the proceedings until the court is able to decide, in the context of the other evidence at trial, whether the evidence indeed is admissible. *Id.* at 146.

**{¶30}** Because Appellant failed to preserve the error on appeal, we must find plain error in order to reverse. The Ohio Supreme Court has recently clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) Id. at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required

to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶31}** *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017–Ohio–8011, ¶¶ 32–34.

**{¶32}** We find Appellant has not demonstrated a reasonable probability of a change in the outcome of the trial had the witness testified. His testimony and report were based solely on the summaries provided in discovery; he had not examined the data or equipment himself. Further, his report is vague, pointing only generally to potential problems in the investigation, rather than to specific problems with the analysis of the data.

**{¶33}** Further, Appellant was able to cross-examine the State's witnesses concerning these potential shortcomings in the investigation as set forth in Singleton's report. Mark Ludlow, the operations analyst from AOL who flagged the original email image, testified on cross-examination he could not affirmatively identify Appellant as the person who was logged into his account when the email was sent, and could not confirm the email originated from Appellant's home address. Tyler Zvolanek, from WOW Internet Cable and Phone, testified on cross-examination he could not testify to whether there was a secure router in Appellant's home. Sgt. Zech admitted on cross-examination he did not examine the router or the modem.

{¶34} Appellant presented evidence of possible other suspects who had access to the home, including a registered sex offender who lived in the neighborhood. He testified other people had access to his email address. He testified the computer was not password protected. Further, the IP addresses in the WOW records and AOL email were both in evidence for the jury to draw its own conclusion concerning the match.

{¶35} Appellant addressed most of the vague concerns set forth in Singleton's report by cross-examination and his own testimony at trial, yet the jury found Appellant guilty on all counts. In the absence of any specific testimony by Singleton to point to specific errors in the analysis of the computer data which would tend to exculpate Appellant, we find the court did not commit plain error in granting Appellee's motion in limine to exclude the testimony of Singleton.

{¶36} The second assignment of error is overruled.

III.

{¶37} In his third assignment of error, Appellant argues his trial counsel was ineffective.

{¶38} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id.*

**{¶39}** Appellant first argues counsel was ineffective for failing to file a notice of alibi pursuant to Crim. R. 12.1.  However, he does not explain who his alibi witness would be, and the record does not demonstrate he had an alibi witness which counsel failed to identify.  While Appellant testified he was rarely home, he did not pinpoint where he was on the dates and times the files in question were created.  Further, the files were created at all times of the day and night, and on fifteen different days, over a period of years making an alibi defense difficult to present.  We find counsel was not ineffective for failing to file a notice of alibi concerning an unidentified alibi witness or witnesses.

**{¶40}** Appellant also argues counsel was ineffective for failing to compel discovery to allow Mr. Singleton, the expert witness discussed in assignment of error two, to personally examine the evidence rather than the summaries provided in discovery.  He argues counsel should have taken steps to ensure Mr. Singleton had access to the actual evidence, and then requested a second voir dire of the witness.  He further argues Mr. Singleton prepared a second report stating Appellant's email was used 23 hours a day, suggesting someone else had access to the account, which counsel made no attempt to use at trial.

**{¶41}** The record of the motion in limine hearing demonstrates the actual data was available for Mr. Singleton to review through the prosecutor's office.  However, he testified he did not have time to examine the data himself.  8/22/17 Tr. 49, 54.  Singleton stated he would love to do a full investigation but there was no time.  Therefore, the record does not demonstrate a motion to compel and a second hearing would have resulted in the

court allowing the witness to testify, as the witness had access to the information, but chose not to do a full investigation due to time restraints. Further, Appellant testified at trial other people had access to his email account, rendering the expert's opinion someone else may have had access to the account cumulative; therefore of limited value. As discussed in the second assignment of error, Appellant has not demonstrated a reasonable probability of a change in the outcome had the witness been permitted to testify.

{¶42} Appellant next argues counsel was ineffective for failing to request a bill of particulars because of the broad range of dates set forth in the indictment, which impaired his ability to present an alibi defense. The indictment in the instant case sets forth a date range for each file starting with the date it was created and ending on the date the computer or hard drive was seized. Further, each count specifies which file located on the computer or hard drive is associated with that count. The State filed a discovery certification on February 16, 2017. Counsel for Appellant referred to the dates "stated in discovery" during a discussion of amending certain charges, suggesting he received information regarding the dates associated with each count in discovery. Tr. 12. Nothing in the trial transcript suggests counsel for Appellant was surprised by the evidence the State presented concerning file creation dates and times. Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel requested a bill of particulars.

{¶43} Appellant next argues counsel was ineffective for failing to subpoena a registered sex offender who lived in Appellant's neighborhood and had access to Appellant's house. The record does not demonstrate what this witness would testify to if

called.  Appellant offered testimony the registered sex offender lived near his residence and had full access to the home, thus creating a suggestion he was the person who downloaded the pornographic material on Appellant's devices without actually calling the witness, who likely would have denied doing so on the witness stand.  We find no ineffective assistance of counsel in failing to subpoena this witness under the second prong of the *Strickland* test.

**{¶44}**  Finally, Appellant argues the cumulative effect of counsel's errors resulted in prejudice.  In that we have found no basis for a claim of ineffective assistance of counsel upon review of each of Appellant's assertions, there can be no cumulative effect. *State v. Thorne*, 5th Dist. Stark No. 2003CA00388, 2004-Ohio-7055, ¶ 73.

**{¶45}**  Appellant's third assignment of error is overruled.

IV., V.

**{¶46}**  In his fourth and fifth assignments of error, Appellant argues the judgment is not supported by sufficient evidence and is against the manifest weight of the evidence. He argues the State presented no evidence on Count 80.  He argues there is insufficient evidence as to counts one through eighty to demonstrate he knowingly possessed the contraband, and further the judgment finding he knowingly possessed the material on his computer and external hard drive is against the manifest weight of the evidence.

**{¶47}**  An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶48}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶49}** Appellant was convicted of forty-four counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1):

> (A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
>
> (1) Create, reproduce, or publish any obscene material that has a minor as one of its participants or portrayed observers[.]

**{¶50}** He was further convicted of thirty-six counts of pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(1):

> (A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
>
> (1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]

**{¶51}** As to counts one through eighty, the parties entered a written stipulation the materials met the definition of prohibited materials set forth in the statute. The only dispute was whether Appellant knowingly created the files containing the prohibited material.

**{¶52}** As to Count 80, Appellant argues there was no testimony supporting this count. While Sgt. Zech testified in detail to the material charged in most counts of the indictment, he did not testify specifically as to Count 80. However, Count 80 of the indictment charges Appellant with pandering obscenity relating to a file titled Concubina_105.jpeg. This file is located in State's Exhibit 1, a flash drive admitted into evidence at trial, containing the email which triggered the instant investigation. Mark Ludlow, the operations analyst at AOL who flagged the email and authenticated the exhibit, testified he reviewed each of the attachments to this email before he forwarded the email and attachments to NCMEC. He testified each of the attached images, which would include the file charged in Count 80, contained images of child sexual exploitation. Agent Amanda Saxton of ICAC testified she reviewed the images contained in the email to confirm it contained child pornography prior to commencing the criminal investigation. Further, the parties stipulated the material in Count 80 violated R.C. 2907.321(A)(1). We find there was sufficient evidence presented by the State to support the conviction on Count 80.

**{¶53}** As to the remaining counts, Appellant argues he did not download the files with knowledge of the character of the material or performance involved. He argues the State did not present sufficient evidence he was the person who downloaded the material. Although Appellant couches his argument in terms of the mens rea of "knowingly," he is

actually arguing failure to prove identity; i.e., the State failed to prove he was the person who downloaded and possessed the material found on his computer and hard drive.

**{¶54}** The State presented evidence all of the material was found downloaded on the computer in Appellant's home, or on the external hard drive in his home. Nine of the images had been emailed from Appellant's email address to his email address. Det. Jason Campbell of the Delaware Sheriff's Department conducted surveillance on the home for several days, and did not see anyone entering or leaving the residence. He further checked for an unsecure wifi connection, and did not find one. He testified in a drawer of the desk where the computer was located in Appellant's home, police found "boy butter," a butt plug, a twisted dildo, and girls' panties, and a photo of the contents of the drawer was admitted into evidence. Further, he testified all of the mail found on the desk was addressed to Appellant.

**{¶55}** Sgt. Jeff Zech testified the circumstantial evidence in the case points to Appellant as the perpetrator. The "Doves" file attached to the email flagged by AOL was also located on the desktop of the computer, where it could be seen upon starting the computer, and the images were backed up to the external hard drive. The material was downloaded over a period of years, not in a single incident. Files existed on the computer for six months to a year before the computer was seized. One of the photographs found in the computer was a picture of Appellant sitting at the desk, using the computer. A search of Appellant's phone seized from his person demonstrated at the time police were executing the search warrant on his residence, Appellant was searching the definition of "pandering" online, and later the same day he searched for information on how to delete past searches and other internet activity.

{¶56} We find the evidence presented by the State was sufficient, if believed by the jury, to find Appellant was the perpetrator of the crimes charged.

{¶57} Appellant further argues the judgment is against the manifest weight of the evidence because there is reasonable doubt as to who accessed Appellant's computer, there is a possibility the router was used by remote, and there is a likelihood the registered sex offender living in the neighborhood entered the home and committed the crimes.

{¶58} We find the jury did not lose its way in finding Appellant guilty on all counts. As discussed above, the State presented circumstantial evidence Appellant was the person who downloaded the files found on his computer and sent the email from and to his email address with the images attached. Appellant testified he did not put the material on his computer or send the email with the attached "Doves" file, and he believed the sex offender living in the neighborhood was responsible. He testified he was rarely home, and many people had access to his home and computer, including the sex offender living in the neighborhood. The jury rejected Appellant's theories as to how the evidence might have ended up on his computer without his knowledge or participation. We find the jury did not lose its way, in light of all the evidence presented by the State, in finding his testimony to not be credible, and the judgment is not therefore against the manifest weight of the evidence.

{¶59} The fourth and fifth assignments of error are overruled.

VI.

{¶60} In his sixth assignment of error, Appellant argues the court erred in failing to consider his argument the offenses committed on the same day are allied offenses, and thus he could be convicted of only fifteen counts, not eighty.

**{¶61}** The Ohio Supreme Court clarified the test courts should employ when deciding whether two or more offenses are allied offenses that merge into a single conviction under R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, ¶ 25, describing its decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061 as "incomplete." *Id*. at ¶ 16. *Johnson* directed courts to focus on the defendant's conduct when evaluating whether offenses are allied. The *Ruff* court held when determining whether allied offenses that merge into a single conviction, the court must first examine the defendant's conduct. *Ruff* at ¶ 25. Multiple offenses do not merge if (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id*. at syllabus. With respect to the first factor, the court explained two or more offenses are dissimilar within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at syllabus.

**{¶62}** At the sentencing hearing, counsel for Appellant appeared to argue he could only be convicted of one crime, because it was possible the pictures and videos were all downloaded on a single date:

But, Your Honor, I think the merger issue is the most significant here. That when you have an indictment with such a broad range of dates. We don't know, I don't think, we don't know how many of these dates overlapped. I mean, I'm looking at some notes I took regarding the indictment. Some of them are a year and a half, I know that's not

uncommon in these kinds of cases, but do we know that 15 dates of creation mean that 15 different days these files were downloaded on to Dr. Ryan's computer? Again, looking at it in the abstract, just looking at it from the legal filing, it doesn't appear obvious to me.

Now, if the Court has notes and says well no, this witness says he testified beyond a reasonable doubt this image came on this day and this image case on that day, then perhaps the merger argument would be defeated, and the holding of State versus Roth (phonetic) wouldn't apply. But in the absence of some sort of testimony like that, it's certainly possible, and considering – I bring up the rule of lenity, if we can't say otherwise that these were all created on all these different days, then I would ask the Court to consider this as one crime. I know these two statutes, I know you have a Pandering Sexually Oriented Material and Pandering Obscenity, so you can certainly say those are different crimes. But are one of them a lessor [sic] included offense or the other? Perhaps not. But I think the dates of offenses is crucial to this sentencing hearing. And unless there's something in the record that I – obviously I've not seen the trial transcript as of yet – saying these are all on different dates, I would say it's certainly possible that whoever downloaded these – I know the jury said it was Dr. Ryan – but that these crimes occurred on a single date.

**{¶63}** Sent. Tr. 14-16.

{¶64} Appellant now argues the eighty convictions should merge into fifteen, based on the dates of the offenses.

{¶65} This Court has previously rejected the argument posited by Appellant, finding each individual image constitutes a separate offense:

> We find the multiple offenses of pandering sexually oriented matter involving a minor in the case do not merge. We thus join with multiple other Ohio appellate court districts which have found that "multiple convictions are allowed for each individual image because a separate animus exists every time a separate image or file is downloaded and saved." *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015–Ohio–3145, ¶ 62, citing *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013–Ohio–1795, ¶ 53; see also, *State v. Eal*, 10th Dist. Franklin No. 11AP–460, 2012–Ohio–1373, ¶ 93. The selection of each individual video or image is a separate decision. *Id*.

{¶66} *State v. Starcher*, 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250, ¶ 35.

{¶67} We find the trial court did not err in rejecting Appellant's argument the offenses merged, as each count represented an image or video, and a separate animus exists every time a separate image or file is downloaded or saved.

**{¶68}**  The sixth assignment of error is overruled.

**{¶69}**  The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur